UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY D. JONES,

                          Plaintiff,

v.

DEPARTMENT OF VETERAN
AFFAIRS,

                          Defendant.

_____/

Case No. 22-11972

Matthew F. Leitman
United States District Judge

David R. Grand
United States Magistrate Judge

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 33)**

In this case, plaintiff Ricky D. Jones ("Jones") brings claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, against his former employer, the Department of Veteran Affairs (the "VA").[1]  In short, Jones claims that following his complaints to the Equal Employment Opportunity Commission ("EEOC") that he had been subjected to "sexual harassment" and a "hostile work environment," the VA terminated his employment in retaliation.[2]

After the completion of discovery,[3] the VA moved for summary judgment, arguing

---

[1] On March 1, 2023, the Court issued an Order consolidating another case filed by Jones, *Jones v. Dep't of Veteran Affairs*, Case No. 22-12455, into the instant, first-filed case.  (ECF No. 18).

[2] The case was referred to the undersigned for all pretrial matters, pursuant to 28 U.S.C. § 636(b). (ECF No. 8).

[3] On September 12, 2023 (the postmarked date), Jones filed a "Motion and Brief to Compel Full and Complete Discovery Responses," arguing that the VA failed to "provide full and complete responses to Document Request No. 6 emails from EEO manager and the Agency representatives." (ECF No. 38, PageID.575-76).  The VA responds that the motion is untimely and that, in any case,

that Jones cannot make out a *prima facie* case of discrimination and/or retaliation, and that even if he could make such a case, summary judgment is warranted because he failed to raise a material question of fact as to the VA's legitimate, non-discriminatory/non-retaliatory reason for terminating him, and failed to raise a material question of fact that those reasons were pretextual.  (ECF No. 33).  Jones filed a response, and the VA filed a reply.  (ECF Nos. 40, 41).  For the reasons set forth below, the VA's motion should be GRANTED.

## I.    Factual Background

Jones was hired in September 2008 by the VA Medical Center in Detroit, Michigan, as a Food Service Worker, and on August 16, 2009, he was reassigned to a position as a Housekeeping Aid in the Environmental Management Service ("EMS").  (ECF No. 33-3, PageID.333; ECF No. 33-8, PageID.389).  The record reflects Jones had a lengthy disciplinary history dating back to 2012.  Specifically, in January 2012, Jones was charged with and reprimanded for (1) rude and intimidating behavior and use of profane language to CWT worker Page Panella; and (2) failure to follow the Violent, Intimidating and

---

the VA produced approximately "300 pages of responsive emails," and that Jones has not otherwise shown why any additional documents he contends are missing are relevant and proportional to the needs of his case.  (ECF No. 39).  The Court agrees that Jones' motion is untimely, as it was filed more than a month after the close of discovery on August 9, 2023, and after the VA already filed its motion for summary judgment.  (*See* ECF No. 32); *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380 (E.D. Mich. 2000) ("A district court may properly deny a motion to compel discovery where the motion to compel was filed after the close of discovery.").  More importantly, Jones' motion fails to identify any specific withheld e-mails between the "Agency Representative's and EEO managers" that make the VA's response of approximately 300 e-mails not "full and complete," much less the content of such documents and why they are relevant and proportional to the needs of his case.  *O'Malley v. NaphCare Inc.,* 311 F.R.D.461, 463 (S.D. Ohio 2015); Fed. R. Civ. P. 26(b)(1).  Accordingly, Jones' motion to compel **(ECF No. 38)** is **DENIED**.

Disruptive Behavior Prevention Program ("VIDBPP").  (ECF No. 33-4, PageID.378).[4]  In June 2012, Jones was charged with and suspended three days for (1) rude, intimidating, and threatening behavior; and (2) failure to follow the VIDBPP.  (ECF No. 33-5, PageID.380).[5]  In June 2014, Jones was charged with and suspended for 14 days for (1) rude and disrespectful behavior toward a supervisor; and (2) inappropriate and unprofessional behavior in a patient care setting.  (ECF No. 33-6, PageID.383).[6]

The record also reflects that Jones began filing EEO complaints starting in 2012. Specifically, on February 13, 2012, Jones "initiated contact with an EEO Counselor . . .

---

[4] The charges specify in part that, on December 28, 2011, Jones "used profane language towards Ms. Panella and indicated that you '*hated working for housekeeping and dealing with the [profanity] union.*'  You continued your tirade with Ms. Panella to state that you told your supervisor, Mr. Clifton Buchanan, that you would '*whip Mr. Buchanan's [profanity] outside the VA.*'  Ms. Panella reported your actions to Mr. Buchanan, and he felt it necessary to report your threats to the VA Police. . . . Your rude and intimidating behavior and profane language to a CWT worker will not be tolerated."  (ECF No. 33-4, PageID.378) (emphasis in original).

[5] The charges specify in part that, on January 26, 2012, Jones complained about an issue with his current assignment to Lead Housekeeping Aid Louis Brim, and "[l]ater the same day, Mr. Brim and Carlos Buchanan observed you walking in front of them on the lower level.  Once you began to turn the corner about 20 feet ahead of them, you looked at them with a frown on your face, and proceeded to slam your fist into your hand in an intimidating manner."  (ECF No. 33-5, PageID.381).

[6] The charges specify in part that "[i]t was reported that on March 23, 2014, you exhibited rude and disrespectful behavior during your conversation with Edwina Bailey, Housekeeping Aid Supervisor.  According to the e-mail Ms. Bailey sent to [EMS Chief] Russell Moorman, Ms. Bailey asked you to report to the lab to empty the trash cans and clean the restrooms. . . . You replied, "*I hope that cancer eats you alive bitch.*"  (ECF No. 33-6, PageID.384) (emphasis in original).  It also specifies that "[i]t was reported that on December 12, 2013, you exhibited inappropriate and unprofessional behavior in patient room A[] . . . According to the report of contact submitted by [EMS Assistant Chief] Roy Rush, while discussing your current workload with Linda Davis, Housekeeping Aid Supervisor, your tone of voice became very loud," and that Jones had to be asked "to step into the hallway after hearing you use profanity and speak in a loud tone of voice in the patient room."  (*Id.*).

alleging that he had been discriminated against on the basis of sex," and on "May 15, 2012," Jones "filed a formal discrimination complaint."  (ECF No. 33-8, PageID.394); *see* (ECF No. 33-7, PageID.386).[7]  In 2014, Jones filed three EEO complaints: on April 29th; August 16th; and September 9th, for harassment and a hostile work environment based on reprisal for protected EEO activity.  (ECF No. 33-9, PageID.406); (ECF No. 33-10, PageID.407); (ECF No. 33-11, PageID.409); (ECF No. 33-13, PageID.415).[8]  All of his EEO complaints were ultimately dismissed by the EEOC.

The record reflects that Jones complained of sexual harassment, a hostile work environment, and unfair treatment that he contends he experienced at the EMS, while his co-workers and supervisors reported hostile and violent behavior from Jones.  As such, on July 15, 2014, the VAMC Director, Dr. Pamela Reeves, convened an Administrative Board of Investigation ("AIB") to "conduct a thorough investigation into the facts and circumstances [] regarding allegations [of] sexual harassment, hostile work environment,

---

[7] A two-day hearing was held in January 2015 before EEOC Administrative Judge Deborah M. Barno, who found that "[t]here was no evidence presented that any of the actions challenged by [Jones] were sexual in nature," and that Jones' "perception of events was not supported by the factual record of evidence in this case," as "the facts demonstrated that [Jones] was the aggressor, hostile, and combative and that his actions were intentional to intimidate and threaten his coworker and supervisors."  (ECF No. 33-8, PageID.400-01).  As for reprisal, Judge Barno found that Jones failed to establish the requisite knowledge of his EEO activity, or that there was a causal connection between his protected EEO activity and the adverse employment action.  (*Id.*, PageID.401-02).

[8] These three cases were consolidated for a hearing before Administrative Judge Barno, who found in favor of the VA.  (ECF No. 33-12, PageID.411-12).  On September 12, 2022, the EEOC's Office of Federal Operations affirmed the judgment, finding that "the evidence in the record indicates that [Jones] himself created a hostile work environment for his coworkers due to his frequent and repeated inappropriate language and conduct," and that the record "did not establish that he was subjected to discrimination as alleged."  (ECF No. 33-13, PageID.418).

and unfair treatment in the Environmental Management Service." (ECF No. 33-14, PageID.421). In a memo to the AIB, Dr. Reeves advised that "employee Ricky Jones, Housekeeping Aid claims that he has experienced the noted issues for the past two years," and that "other EMS employees, Management officials, and other VA employees have reported allegations of inappropriate behavior such as threats of violence (verbal and non-verbal) displayed by Mr. Jones." (*Id.*). Dr. Reeves directed the AIB to investigate Jones' allegations as to sexual harassment, unfair treatment, and hostile work environment, as well as "[a]llegations of violence in the workplace specific to counter-claims of Mr. Jones[']  behaviors." (*Id.*, PageID.421-22).

The AIB completed its investigation and issued a report on October 14, 2014. (ECF No. 33-15). The report reflects that the AIB obtained sworn testimony from Jones; his former supervisors Linda Davis, Edwina Bailey, and Patricia Adams; EMS Chief Russell Moorman; assistant housekeeping officer Roy Rush; Detective Marlon Friendly; housekeeping aids LaTonya Williams and Orlandis Lawrence; housekeeping supervisor Clifton Buchanan; respiratory therapist Carlos Wells; food service worker Raleigh Green; and human resources specialist Christina MacAfee-O'Neil. (*Id.*, PageID.423). The AIB concluded that there was a lack of convincing evidence to support Jones' claims of sexual harassment, unfair treatment, or hostile work environment, as there were no witnesses who could corroborate his allegations, and Jones could not provide any evidence to support his claims. (ECF No. 33-15, PageID.427-28). The AIB further found that while "Jones has made complaints that allege unfair treatment and nepotism through the designation of assignments by management and supervisors [], the incidents he describes in these

5

complaints fall within the authority of VA supervisor to designate and assign work," and that "Jones's EMS supervisors were merely working within the authority granted to them by their position." (*Id.*, PageID.428).  The AIB also found that several witnesses "testified that it was Mr. Jones [who] was the cause of creating a hostile work environment through his actions of frequent intimidation and harassment of other employees," and that "[t]here is sufficient evidence to support the allegation that Mr. Jones' behavior was in violation of [the VIDBPP]," specifically in the form of "ROCs, Disciplinary Actions, and VA Police reports, as well as witness testimony given to the AIB depict[ing] a history of conduct by Mr. Jones that can be defined as violent," and "[f]indings of [f]act show[ing] a pattern of aggressive behavior, intimidation, altercations, threats, and dereliction of duty by Mr. Jones towards other employees, supervisors and patients." (*Id.*, PageID.429).  Based on these findings, the AIB recommended "disciplinary action at the discretion of the convening authority against Mr. Jones." (*Id.*, PageID.429).

On October 27, 2014, Dr. Reeves issued Jones a memo advising that "effective immediately, you are being placed on authorized absence based on the findings of the [AIB]." (ECF No. 33-16, PageID.430).

On January 20, 2015, EMS Chief Jahmal Ross issued Jones a notice of proposed removal, stating that "it is proposed to remove you from your position of Housekeeping Aid" based on charges of violating the VIDBPP and creating a hostile work environment. (ECF No. 33-17, PageID.431-34).  Under "Charge A" for violating the VIDBPP, the notice lists nine "Specifications" based on testimonies provided to the AIB during its investigation:

- (1) according to housekeeping supervisor Edwina Bailey, "when you were instructed by her to accomplish tasks you continuously become loud, 'bent out of shape', hostile, and you just 'blow up.'"
- (2) according to Bailey, "when you were instructed to take on two [] assignments based on the needs of the service, you would do an unacceptable job and not complete the assignment, in order to avoid being assigned extra duties in the future."
- (3) according to Bailey, "you have continually portrayed a bad attitude and combative disposition, complaining often, and refusing to huddle appropriately because of your refusal to stand near your coworkers."
- (4) according to EMS supervisor Clifton Buchanan, EMS chief Russell Moorman, and VAMC police officer Marlon Friendly, "you were witnessed on June 19, 2014, by Mr. Buchanan and Officer Friendly on a security camera recording, coming very close to bumping into Mr. Moorman in the hallway, to the extent Mr. Moorman had to veer out of the way so that you would not make contact. You handed Mr. Buchanan your keys, and then left in the direction Mr. Moorman was walking. You then followed Mr. Moorman into the restroom and off security camera footage. Inside the restroom, you threatened Mr. Moorman, stating, '*You better get out of my way,*' and then left."
- (5) according to officer Friendly, "you continuously became combative and resistant while he was informing you of your appropriate level of access to the Medical Center outside of medical appointments and normal duty hours."
- (6) according to food service worker Raleigh Green, "when Mr. Green was passing trays on A5 North, you stopped in front of his food cart at every single room. According to Mr. Green, you would stop each time, look over your shoulder, and give him a dirty look."
- (7) according to housekeeping aid Orlandis Lawrence, "you have talked about death to all supervisors, and you have spoken inappropriately to your supervisors much of the time."
- (8) according to Lawrence, "on a Sunday in July[] 2014, you threatened Mr. Lawrence, stating '*you ain't nothing,*' and telling him, '*they ain't doing nothing but using you as a little pussy.*' Additionally, Mr. Lawrence stated that you spit at him and held your fist up to him at the bus stop. According to Mr. Lawrence, you continuously threaten many people."
- (9) according to housekeeping aid LaTonya Williams, "you had an incident with her whereby you snapped your arm out in a threatening manner as you were passing her in the hall. Then, after being instructed by management not to go to the 4th floor yellow section, Ms. Williams witnessed you get off the elevator near the 4th floor yellow section. On a later date, she witnessed you near her section at night after you were moved to midnights."

(ECF No. 33-17, PageID.431-33) (emphasis in original); *see also id.*, PageID.438-57 (AIB witness testimonies on Charge A).

The notice also lists five "Specifications" under "Charge B" for creating a hostile work environment based on the following testimonies provided to the AIB during its investigation:

- (1) according to EMS supervisor Patricia Adams, "you have continuously behaved in a hostile manner when passing her at work, including growling at her and throwing up your arms intimidatingly or to hide your face."
- (2) according to Bailey, "you have continuously complained and portrayed this Medical Center in a negative light, while in the presence of and when speaking to patients."
- (3) according to EMS assistant chief Roy Rush, "you have been witnessed using profane language in front of patients."
- (4) according to Bailey, Buchanan, Moorman, Green, Lawrence, Williams, Adams, Rush, EMS supervisor Linda Davis, and respiratory therapist Carlos Wells, "you continuously create hostility within the workplace, making many unfounded and unsubstantiated complaints and accusations against the majority of the people you work with, including your supervision and other employees outside of your Service. You often refuse to speak with or acknowledge certain people, and are angry much of the time. You also stare or glare at employees, which creates an uncomfortable environment which many employees view as hostile. Many of these complaints and accusations are in retaliation for others reporting you for your conduct. Furthermore, you have commonly used inappropriate and profane language."
- (5) according to Wells, "you were hostile towards Mr. Wells when he came into a lounge investigating a noise that sounded like a dog barking. When he inquired if you were the cause of the noise, you replied, "*Yeah, what the fuck you doing watching me eat! Yeah, you heard me. What the fuck are you doing watching me eat!*""

(ECF No. 33-17, PageID.434) (emphasis in original); *see id.*, PageID.458-88) (AIB witness testimonies on Charge B).

Based on the above proposed notice of removal, on February 9, 2015, Dr. Reeves issued a notice informing Jones that a "decision has been made to remove you from employment effective (14) days from the receipt of this notice" based on his sustained charges of violating the VIDBPP and creating a hostile work environment. (ECF No. 33-18, PageID.500). Dr. Reeves stated that, "[i]n reaching my decision, I considered all of

8

the evidence developed," and "concluded that the sustained charges against you are of such gravity that mitigation of the proposed penalty is not warranted, and that the penalty of removal is appropriate and within the range of reasonableness." (*Id.*).

That same day, on February 9, 2015, the VA received Jones' written "Response to Proposed Removal." (ECF No. 33-19, PageID.504). In his response, Jones generally argued that "the evidence provided by the Agency is not sufficient to support any disciplinary action[,] [let] alone removal." (ECF No. 33-19, PageID.517). He asserted that Charge A "applies to nothing more than false isolated incidents that have not been substantiated by no evidence, statements of lies provided by employees involved in charges under my [] EEOC case," that there was "[n]o evidence of a threat," and that "[m]ost statements are not supported with the appropriate documentation . . ." (*Id.*). As to Charge B, Jones contended that "EMS is accus[ing] me of creating a hostile [sic] after I informed you two years ago back in 2013, that I was in a hostile environment? Everything that has been alleged to have occurred in EMS happen after I requested to be removed out of this department. . . . These witnesses testimony are not [credible] and create a conflict of interest . . . The attached information was not provided to the AIB, this information consist of about fifty documents not provided to the AIB, thus making that report partial and bias. . . . This Proposed Removal should be rescinded as it is in violation [of] legal law for retaliation." (ECF No. 33-19, PageID.518).

On February 10, 2015, Dr. Reeves issued an amended notice of removal, stating that while "[y]our timeframe for response expired on February 4, 2015, and your written response was received on February 9, 2015," she "took your written response into

consideration in making [her] decision," and she still concluded that the "penalty of removal is appropriate."  (ECF No. 33-20, PageID.519).

Jones then appealed his removal to the Merit Systems Protection Board ("MSPB"). (ECF No. 33-21).  On September 28-29, 2015, Jones appeared at an in-person hearing before Administrative Judge ("AJ") Katherine E. Beaumont.  (ECF No. 33-3, PageID.332). On April 13, 2016, Judge Beaumont issued an initial decision affirming the VA's decision to terminate Jones' employment.  (*Id.*, PageID.333).  Judge Beaumont noted that while Jones "alleges that both his disciplinary history and his removal resulted from retaliation for his EEO activity," Charge A was sustained based on "cumulative testimony of the witnesses demonstrates that [Jones] was aggressively difficulty to work with and difficult, if not impossible, to supervise," and that "[t]hrough his intimidating and disruptive behavior, [Jones] affected his work and the work of others," and Charge B was sustained based on "a total of 11 witnesses [who] testified to the AIB about hostile behavior by [Jones]," and "[t]he record evidence includ[ing] physically intimidating gestures, growls, name-calling, prolific complaining, inappropriate behavior in front of patients, refusal to be spoken to, glares, hostile language, and threats," which were so "frequent and pervasive" that it "plainly constitutes creating a hostile work environment."  (*Id.*, PageID.349-50, 357-58).  Judge Beaumont also concluded that Jones failed to establish any harmful procedural error, or that his removal was motivated by his prior EEO activity.  (*Id.*, PageID.364-70).

Jones filed a petition for review of the AJ's decision, but on July 21, 2022, the MSPB issued a final order affirming in the AJ's decision.  (ECF No. 33-22).

On August 23, 2022, Jones filed the instant action against the VA, alleging

discrimination and wrongful termination from his employment. (ECF No. 1). On October 13, 2022, Jones filed another complaint against the VA in the Eastern District of Michigan, alleging that he was retaliated against for filing three EEO complaints in 2014. *Jones v. Dep't of Veterans Affairs*, Case No. 22-12455, ECF No. 1). The cases were consolidated. (ECF No. 18). The VA now moves for summary judgment as to all claims against it. (ECF No. 33). Having carefully reviewed the parties' arguments and the record evidence, the Court agrees that summary judgment in the VA's favor is appropriate.

## II.     Standard of Review

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving

party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id*. (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id*. at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

### III. Analysis

As an initial matter, while Jones' complaint loosely uses the term "discrimination," the complaint contains no allegations of discrimination based on his membership in a protected class. To the extent Jones seeks to allege an employment discrimination claim, under the *McDonnell Douglas* framework,[9] Jones must first establish a *prima facie* case of discrimination by showing that: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was

---

[9] Where, as here, a plaintiff does not purport to have direct evidence of discrimination, but instead is relying on circumstantial evidence, he must proceed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

replaced by someone outside the protected class or was treated differently than a similarly situated, non-protected employee. *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006). Here, Jones has not specifically alleged his membership in a protected class, much less identified a similarly situated, non-protected comparator who was treated differently from him. As such, Jones failed to state any employment discrimination claim based on his membership in a protected class.

Rather, liberally construed, the gravamen of Jones' complaint is that he was wrongfully terminated in retaliation for his prior protected EEO activity, and that the MSPB failed to properly review his appeal of the termination decision. The Court will address both claims, in turn.

### A. The VA is Entitled to Summary Judgment on Jones' Retaliation Claim

As noted above, in cases where there is no direct evidence of retaliation, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. Wrenn v. Gould*, 808 F.2d 493 (6th Cir. 1987). First, a plaintiff must set forth a *prima facie* case of retaliation. *See Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). To establish a *prima facie* case of retaliation under Title VII, the plaintiff must satisfy four elements:

> (1) he engaged in a protected activity; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.

*Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 568 (6th Cir. 2019) (citations and quotations omitted).

Assuming the plaintiff establishes a *prima facie* case of retaliation, "the burden of

production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 996 (6th Cir. 2009) (quoting *Canitia v. Yellow Freight Sys.*, 903 F.2d 1064, 1066 (6th Cir. 1990)).  "The plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate 'that the proffered reason was not the true reason for the employment decision.'" *Canitia*, 903 F.2d at 1066 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

> ### i.  *Jones Did Not Raise a Material Question of Fact as to All Elements of a Prima Facie Case*

The VA argues that "Jones cannot establish the fourth element of a prima facie case—a causal connection between his protected EEO activity and his removal."  (ECF No. 33, PageID.313).  The Court concurs that Jones failed to raise a material question of fact on that element.[10]

In order to demonstrate the fourth element of a causal connection, "the evidence must be sufficient to raise an inference that the protected activity was the likely reason for the adverse action." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 463 (6th Cir. 2001).  Jones fails this prong of his *prima facie* case.  First, Jones continued working for the VA until February 2015, which is nearly three years after he filed his first EEO complaint in May 2012, and more than five months after he filed his last EEO complaint in August 2014.  As such, the temporal proximity between the filing of his EEO complaints and his termination,

---

[10] The Court will assume for the purposes of this Report and Recommendation that Jones at least raises a material question of fact as to the first three prongs of his *prima facie* case.

by itself, is insufficient to establish causation. *See, e.g.*, *Doe v. City of Detroit*, 3 F.4th 294, 304 (6th Cir. 2021) ("Nor does any temporal proximity support Doe's argument, as more than five months had passed between the time Doe filed her second complaint and [the subsequent adverse employment action.]"); *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612 (6th Cir. 2013) (holding that a period of four months between the protected activity and adverse action "does not, by itself, imply causation.").[11]

Second, and more importantly, it is undisputed that, based on complaints from other VA employees, the AIB conducted an investigation where it interviewed as many as eleven of Jones' co-workers and supervisors, who consistently reported hostile, harassing, and

---

[11] To the extent Jones asserts that the VA issued his notice of proposed removal eight days before his hearing on his 2012 EEO complaint to "divide" his "time and attention," the relevant time period for purposes of causation is "between when the employer learns of protected activity and the subsequent adverse employment action . . ." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008). Moreover, Jones does not argue, much less demonstrate with evidence, that Jahmal Ross, who issued the notice of proposed removal, was aware of Jones' 2012 EEO complaint or that he had been scheduled for an EEO hearing. To the contrary, Jones asserts that Ross is "someone [Jones] had never met," and that "Mr. Ross had no knowledge of the Plaintiff, nor had he ever met the Plaintiff for questioning of the events of allegations." (ECF No. 40, PageID.642).

Moreover, to the extent Jones' complaint alleges that his 14-day suspension in June 2014 was in retaliation for EEO complaints he filed on "April 29, 2014, and September 10, 2014" (Case No. 22-12455, ECF No. 1, PageID.5), such claim fails. The record evidence reflects that Jones received a notice of proposed suspension on charges for (1) rude and disrespectful behavior toward a supervisor; and (2) inappropriate and unprofessional behavior in a patient care setting, on April 11, 2014 – *before* Jones' filing of his EEO complaints on April 20, 2014, and September 10, 2014. (ECF No. 33-6, PageID.384). Thus, Jones' claim is actually that his 14-day suspension was in retaliation for complaints he filed *after* he had already been charged and proposed to be suspended for his misconduct. A September 2014 complaint obviously cannot be the cause of a June 2014 suspension, and in light of the aforementioned evidence, the notice's timing, and Jones' failure to present any evidence linking the June suspension to his April complaint, the mere fact that the ultimate suspension decision was made a few months after one of Jones' EEO complaints fails to raise a material question of fact on the causation issue. *Suakari v. Akebono Brake Corp.*, 814 F. App'x 108, 113 (6th Cir. 2020).

other abusive and unprofessional conduct by Jones. *See supra* at 6-8. Specifically, the record evidence is full of testimony from supervisors that Jones continually portrayed a bad attitude and a combative disposition, behaved in a hostile manner, and raised his voice and used profanity when addressing his colleagues, even in front of patients. (*See, e.g.,* ECF No. 33-17, PageID.438 (Bailey's testimony that, "Whenever you say something to [Jones] or ask him to do something, he just blows up" and "gets all loud and bent out of shape"); *id.,* PageID.450-51 (Friendly's testimony that Jones was "combative" and "resistant to actually listening" and "resistant to actually talking"); *id.,* PageID.461 (Rush's testimony that Jones would make a gesture "[l]ike beating down, balling his fist like he was punching somebody," and that "[h]e was in the patient's room and he was cursing and that woke [the patient] up"). Jones' co-workers also testified that he would "threaten" many people – both orally through the use of profanity or growling, and physically through hostile gestures such as holding up fists. *See, e.g., id.,* PageID.453 (Green's testimony that "Mr. Jones kept coming up to my food cart, stopping in front of my food cart, look over his shoulder and give me a dirty look, like basically blocking me from taking the trays to the patient rooms."); *id.,* PageID.454 (Lawrence's testimony that Jones "talk[s] about death to all supervisors," that "he spit at me, he balled his fist up at me and I reported it to . . . the supervisors," and that he threatens Lawrence "[a] lot of times"); *id.,* PageID.458 (Adams' testimony that Jones "has this habit when he see[s] people in the hallway he seem[s] to have a conflict when he passes you he throw[s] up his arm like this like he's looking at a watch . . . I think he act[s] like he is hiding his face [] when he pass[es] you - - I don't know if he's trying to intimidate you or brush you with his elbow or whatever," and that Jones

16

"growls when he pass[es] by you."); *see also id.*, PageID.441 (Buchanan's testimony that "What I did witness was [Jones] either attempting to bump Mr. Moorman or bumping Mr. Moorman with his shoulder.").   The information the AIB received was so substantial, consistent, and concerning, that it constitutes "'an intervening legitimate reason' to take an adverse employment action[, which] 'dispels an inference of retaliation based on temporal proximity.'" *Suakari*, 814 F. App'x at 113 (quoting *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 628 (6th Cir. 2013).

Accordingly, Jones cannot meet the fourth prong of a *prima facie* case of retaliation, which requires him to show a "causal connection" between his protected activity and the decision to terminate him.   Because Jones fails to raise a material question of fact as to a *prima facie* case of retaliation, the VA is entitled to summary judgment on that claim.

> ### ii.  *Jones Did Not Raise a Material Question of Fact that the VA's Reasons for His Termination were Pretext*

Even if Jones had been able to make out a *prima facie* case of retaliation, the burden would have shifted to the VA to show a non-retaliatory reason for its termination decision, then shifted back to Jones to show that the VA's reasons were pretextual.   As noted above, the VA meets the burden of showing a non-retaliatory reason for Jones' termination by presenting unrebutted evidence that several "EMS employees, Management officials, and other VA employees have reported allegations of inappropriate behavior such as threats of violence (verbal and non-verbal) displayed by Mr. Jones" (ECF No. 33-14, PageID.421), that the AIB investigated these accusations by questioning numerous of Jones' co-workers, and that those co-workers corroborated and provided detailed additional complaints about

Jones' harassing, abusive, and unprofessional workplace behavior.  *See supra* at 6-8.

While Jones may deny his co-workers' allegations, he fails to raise a material question of fact that the co-workers actually made those reports to the AIB during the course of its investigation, and that Dr. Reeves made the decision to terminate Jones based on that investigation.  (*See* ECF No. 33-18, PageID.500) (Dr. Reeves stating that, "[i]n reaching my decision, I considered all of the evidence developed," and "concluded that the sustained charges against you are of such gravity that mitigation of the proposed penalty is not warranted, and that the penalty of removal is appropriate and within the range of reasonableness.").[12]  Clearly, the type of hostile, harassing, and other abusive conduct Jones' co-workers reported is a valid, non-retaliatory basis for terminating an employee, and Jones presented no evidence that would suggest the VA's reasons were pretextual, let alone motivated by retaliation for his EEO complaints.  *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) ("[A]s long as an employer has an honest belief in its proffered [non-retaliatory] reason for discharging an employee, the employee cannot establish that the reason was pretextual . . . where the employer reasonably relied on the particularized facts that were before it at the time the decision was made.") (quotation omitted).

Accordingly, even if Jones could state a *prima facie* case of retaliation, the VA

---

[12] It is worth noting that, before this latest AIB investigation in 2014, Jones had been previously charged, reprimanded, and suspended for similar behavior – rude, intimidating, and threatening behavior, use of profane language, and failure to follow the VIDBPP in January and June of 2012, and rude and disrespectful behavior toward a supervisor and inappropriate and unprofessional behavior in a patient care setting in June 2014.  (ECF No. 33-4, PageID.378); (ECF No. 33-5, PageID.380); (ECF No. 33-6, PageID.383).

would be entitled to summary judgment on that claim.  *Canitia*, 903 F.2d at 1066.

> B. *The VA is Entitled to Summary Judgment on Jones' Claim Challenging the MSPB's Decision*

In his complaint, Jones makes several general allegations related to the AIB investigation and his appeal to the MSPB: (1) Jones was "asked to attend an [AIB] meeting without advanced notice or any information about this meeting"; (2) the "AIB cannot make a referral for disciplinary action [but] this board make that referral to the Director"; (3) "[d]uring the Merit System trial I learned that the Union was never notified about my Authorized Absence"; and (4) "I appealed the Merit System decision and I have just received their decision in July 27, 2022."  (ECF No. 1, PageID.5).  To the extent these allegations can be construed as Jones contending that his termination was a prohibited personnel action and seeking judicial review of the MSPB's decision, his claim lacks merit and should be dismissed.

The Civil Service Reform Act of 1978 ("CSRA") permits a federal employee subjected to a particularly serious personnel action, such as discharge, to appeal the agency's decision to the MSPB.  *See* 5 U.S.C. § 7702.  The appeal may allege that the agency had insufficient cause for taking the personnel action under the CSRA, and may also charge the agency with discrimination prohibited by another federal statute.  *Id*. "When an employee complains of a personnel action serious enough to appeal to the MSPB and alleges that the action was based on discrimination, she is said … to have brought a 'mixed case.'" *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012); s*ee also Valentine-Johnson v. Roche*, 386 F.3d 800, 802 (6th Cir. 2004) ("A mixed case is one where a federal employee

alleges that she suffered from an adverse agency action appealable to the [MSPB], and that the action was also based on discrimination.").

"[I]n such 'mixed' cases, claims not related to discrimination are reviewed under the standard set forth in 5 U.S.C. § 7703(c), and the MSPB's decision is set aside only if its findings or conclusions are found to be '(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence[.]'" *Kabrovich v. McAckeenan*, No. 19-11564, 2021 WL 859042, at *24 (E.D. Mich. Mar. 8, 2021) (quoting 5 U.S.C. § 7703(c)).  "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

Here, Jones' claim that the MSPB had insufficient cause to terminate him because it was in retaliation for his protected activity is not related to discrimination, and therefore is reviewed under the standard set forth § 7703(c).  On this claim, the record evidence reflects that the AJ presided over a two-day in-person hearing on the decision to terminate Jones' employment, during which the AJ heard testimony from several witnesses including Jones, and found that the "cumulative testimony of witnesses demonstrates that [Jones] was aggressively difficult to work with and difficult, if not impossible, to supervise," and that "[t]he record evidence [of Jones' conduct] included physically intimidating gestures, growls, name-calling, prolific complaining, inappropriate behavior in front of patients, refusal be spoken to, glares, hostile language, and threats" that were "frequent and pervasive."  (ECF No. 33-3, PageID.349-50, 357-58).  Such decision reflects a thorough

weighing of the evidence and testimony, a clear factual basis for sustaining the charges against Jones, and a reasonable determination that removal was the appropriate penalty for Jones' conduct.

After Jones petitioned for review, the MSPB reviewed and affirmed the AJ's decision.  (ECF No. 33-22).  While Jones may disagree with the MSPB's final decision, he has failed to establish that the MSPB's decision was not supported by substantial evidence, *see supra* at 6-8, nor that the decision was an abuse of discretion.[13]

---

[13] To the extent Jones raises procedural challenges to his termination, his claims lack merit.  First, while he claims he did not receive advance notice of the AIB investigation, the VA's policy governing administrative investigations did not require one at that stage.  *See* ECF No. 41-2, PageID.1312 (VA Handbook stating that employees have no "due process" right to advance notice, notice of charges, or right to review or challenge adverse evidence during the administrative investigations because the AIBs are merely "investigative bodies," but "[i]f adjudication proceedings, such as disciplinary proceedings and appeals, are initiated as a result of an administrative investigation, any applicable due process rights would attach to those proceedings." (ECF No. 41-2, PageID.1312).

Additionally, to the extent Jones claims that his union did not receive notice of the AIB investigation (ECF No. 40, PageID.641) ("The Defendant did not notify the Local 933 Union concerning the AIB"), Jones lacks a proper foundation to make that assertion, and Dr. Reeves' memo convening the AIB reflects that a courtesy copy was sent to his union, the "AFGE," or American Federation of Government Employees.  (ECF No. 33-14, PageID.422).  Jones also claims that he was not advised of his right to the union or counsel, but the record reflects that, on July 30, 2014, he was designated a representative, Oliver T. Sanders, to assist him during the AIB investigation (ECF No. 41-3, PageID.1339), and that he was clearly advised in his notice of proposed removal on January 20, 2015, that "[y]ou may be represented by an attorney or other representative of your choice at all stages of this matter, up to and including the issuance of the decision."  (ECF No. 33-17, PageID.435).  As to Jones' claim that he was not permitted an oral reply to the proposed removal, as the MSPB explained, Jones did not follow the proper procedure to schedule an oral reply, and, in any event, his late-filed written response was still considered in the removal decision.  (ECF No. 33-22, PageID.532-533); (ECF No. 33-20, PageID.519).  Finally, Jones claims that he did not receive 30 days' advanced notice of his removal, but his removal was effective on February 24, 2015, which was more than 30 days since the issuance of his notice of proposed removal on January 20, 2015.  (ECF No. 33-17, PageID.431; ECF No. 33-20, PageID.519 (stating on February 10, 2015, that "[a] decision has been made to remove you from employment effective (14) days from the receipt of this notice.").

Accordingly, the VA is entitled to summary judgment on Jones' claim challenging the MSPB's decision to affirm the AJ's decision on Jones' termination from employment.

## IV.   CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the VA's motion for summary judgment **(ECF No. 33)** be **GRANTED**.

Dated: July 9, 2024                        s/David R. Grand
Ann Arbor, Michigan                     DAVID R. GRAND
                                                     United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P.

72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 9, 2024.

s/Eddrey O. Butts_____
EDDREY O. BUTTS
Case Manager
